DAVIDSON *v.* BAKER-VANDER VEEN
CONSTRUCTION COMPANY

1. LIMITATION OF ACTIONS—TOLLING PROVISION—INSANITY—EVI-
DENCE—RETENTION OF ATTORNEY.

Ability to retain a lawyer is not conclusive evidence of a plain-
tiff's mental competence for the purpose of the tolling pro-
vision of the statute of limitations; the fact that plaintiff
retained counsel is some evidence that he is not mentally de-
ranged but it does not conclusively establish that fact (MCLA
§ 600.5851).

2. LIMITATION OF ACTIONS—TOLLING PROVISION—INSANITY—EVI-
DENCE—ASSISTING ATTORNEY.

The fact that the lawyer representing the plaintiff, who claimed
that he was insane when his cause of action accrued, was
able to write letters in plaintiff's behalf from information
obtained from the plaintiff does not negate plaintiff's claim
of mental derangement, because one need not be a blithering
idiot in order to raise the defense of mental derangement
under the statute of limitations (MCLA § 600.5851).

3. LIMITATION OF ACTIONS — TOLLING PROVISION — INSANITY — EVI-
DENCE — ABILITY TO WORK.

The ability of plaintiff to do manual work regularly for various
employers over a period of years and to perform sufficiently
well to earn good wages did not mean that he was not insane
at the time his cause of action accrued, within the statute-of-
limitations definition of insanity (MCLA § 600.5851).

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 6] 51 Am Jur 2d, Limitation of Actions § 187.
[4, 5] 29 Am Jur 2d, Evidence §§ 597, 615.
[5] 51 Am Jur 2d, Limitation of Actions § 187.
[7] 53 Am Jur, Trial § 156 *et seq.*
[8] 53 Am Jur, Trial § 157.
[9] 53 Am Jur, Trial § 212.
[10] 51 Am Jur 2d, Limitation of Actions §§ 186, 187.

4. Evidence—Judicial Admissions—Definition.

> A judicial admission is a distinct, formal, solemn admission made for the express purpose of, *inter alia,* dispensing with the formal proof of some fact at trial.

5. Evidence—Judicial Admissions—Insanity—Statute of Limitation—Tolling Provision.

> Plaintiff's negative response to an interrogatory as to whether, at the time of his accident, he had any physical or mental impairment or disability, did not constitute a binding judicial admission precluding him from claiming that his insanity at the time of the accident tolled the statute of limitations, where the admission was made before any limitations issue had been raised, because the admission was not made for the express purpose of dispensing with formal proof on the disputed factual issue of whether plaintiff was mentallly deranged within the meaning of the tolling provision of the statute of limitations (MCLA § 600.5851).

6. Limitation of Actions—Tolling Provision—Insanity—Evidence.

> Plaintiff's ability to work, to engage lawyers to advance his claims, and his response to an interrogatory stating that he had no mental impairment or disability are, at most, evidence to be considered in deciding whether plaintiff was mentally deranged for purposes of the tolling provision of the statute of limitations (MCLA § 600.5851).

7. Evidence—Question of Fact—Mixed Question—Qualitative Judgment—Undisputed Underlying Facts.

> A mixed question of law and fact, or a question of ultimate fact, exists even though there is no dispute concerning the evidence and the underlying facts where a qualitative judgment concerning the significance of the underlying facts must be made; if the qualitative judgment is in dispute, then the ultimate fact is generally a disputed question of fact.

8. Evidence—Question of Law—Definition.

> A question of law exists only where all reasonable men must agree and then only in a civil case.

9. Limitation of Actions—Tolling Provision—Insanity—Question of Fact—Qualitative Judgment—Undisputed Underlying Facts.

> Defendants' acceptance as true affidavits tending to show that plaintiff was mentally retarded, was like a child, and did not understand legal rights the plaintiff would otherwise be bound

to know did not render the facts regarding plaintiff's insanity undisputed, thereby making the question one to be decided by the court, because a qualitative judgment concerning the significance of the facts remained to be made, and that qualitative judgment being in dispute, the ultimate facts constituted a disputed question of fact.

10. LIMITATION OF ACTIONS—TOLLING PROVISION—INSANITY—COMMENCEMENT OF ACTION—EFFECT ON ADDED DEFENDANTS.

Commencement of an action against one possible defendant does not automatically deprive a plaintiff of the right to assert the insanity tolling provision of the statute of limitations against other defendants, added later, because the mental condition of a person suffering from the kind of derangement contemplated by the statute might be such that, while somewhat aware, he is only partially aware of the circumstances entitling him to maintain an action and he may be only partially or imperfectly able to assist his lawyer in prosecuting the action (MCLA § 600.5851).

Appeal from Kent, Roman J. Snow, J. Submitted Division 3 May 6, 1971, at Grand Rapids. (Docket No. 10626.) Decided July 27, 1971. Leave to appeal denied October 13, 1971. 386 Mich 756.

Complaint by Joe Davidson against Baker-Vander Veen Construction Company, Process Solvent Company, Inc., and William L. Van Tongeren for negligence in the application of acid to school walls and floor. Accelerated judgment for defendants Process Solvent Company, Inc., and William L. Van Tongeren. Plaintiff appeals. Reversed and remanded for trial.

*Andrew J. Transue,* for plaintiff.

*Hillman, Baxter & Hammond,* for defendant William L. Van Tongeren.

*Smith, Haughey, Rice, Roegge & Gould* (by *Michael S. Barnes*), for defendant Process Solvent Company.

*Cholette, Perkins & Buchanan,* for defendant Baker-Vander Veen Company.

Before: R. B. Burns, P. J., and Holbrook and Levin, JJ.

Levin, J. The trial judge entered an accelerated judgment dismissing plaintiff Joe Davidson's complaint as to added defendants, Process Solvent Company, Inc., and William L. Van Tongeren, doing business as Mercury Building Maintenance, on the ground that his claims were barred by a statute of limitation. Davidson appeals.

The added defendants were not served until after the three-year period prescribed by the statute[1] had expired. Davidson relies on a tolling provision, claiming that he was insane at the time his claim accrued and, accordingly, the time for bringing his action was extended and the added defendants were timely served. We conclude that whether Davidson was insane is a disputed question of fact and that the judge erred in resolving that disputed question on affidavits and other papers without a trial.

Davidson was injured on June 1, 1965, in the course of his employment. Two weeks after the injury, June 15, 1965, an attorney filed a workmen's compensation claim in his behalf. Benefits were voluntarily paid.

Seventeen months and twenty days after the accident, on November 21, 1966, Davidson consulted the lawyer who filed this action and who represents him on this appeal. Thirteen months later, two and a half years after the accident, December 16, 1967, Davidson commenced this action against the original defendant, Baker-Vander Veen Construction Company, a corporation.

---

[1] MCLA § 600.5805(7) (Stat Ann 1962 Rev § 27A.5805[7]).

Subsequently on July 18, 1969, a year and a half after this action was commenced and over four years after the accident, an order was entered adding Baker-VanderVeen Construction Company, a partnership, its partners, and the Process Solvent Company, Inc., as parties defendant. Subsequently, on December 5, 1969, there was added an additional defendant, William L. Van Tongeren, doing business as Mercury Building Maintenance. Added defendants, Process Solvent and Van Tongeren, moved for accelerated judgment on the ground that the action was not commenced against them within three years of the accident.

Davidson responded that he was insane when his claim accrued and, accordingly, the time for commencing an action was extended under the following statutory provision, which contains its own definition of the term "insane":

"(1) If the person first entitled to make an entry or bring any action is under 21 years of age, insane, or imprisoned at the time his claim accrues, he or those claiming under him shall have 1 year after his disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852.

"(2) The term insane as employed in this chapter means a condition of mental derangement such as to prevent the sufferer from comprehending rights he is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane."   MCLA § 600.5851 (Stat Ann 1962 Rev § 27A.5851).

Davidson had demanded a jury trial and in his response to the motion for accelerated judgment he asserted that a hearing on the statute of limitations

issue must, under the provisions of GCR 1963, 116.3,[2] be postponed until the jury trial.

Affidavits were filed in Davidson's behalf that tended to show that he was mentally retarded. That Davidson could not read or write, did not know the value of things, was, like a small child, unable to attend to personal and business affairs, that his memory was impaired, it was necessary to explain to him matters the ordinary person would understand, he could not follow directions in business or legal matters, and that he was unable to comprehend simple legal procedures. The affiants also expressed their opinions that Davidson was unable, by reason of mental handicap and incompetency, to comprehend rights he would otherwise be bound to know. They said his mental infirmity had persisted all his

---

[2] "Rule 116 Accelerated Judgment.

".1 Grounds. In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds: * * *

"(5) the claim is barred because of release, payment, prior judgment, statute of limitations, statute of frauds, infancy, or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action. * * *

".3 Affidavit Hearing; Immediate Trial. Any defense or objection raised under this rule, whether in a responsive pleading or by motion, may be noticed for hearing by either party as if raised by motion. Affidavits or other evidence may be submitted by either party to support or oppose the grounds asserted in the pleading or motion, and in every case where the grounds asserted do not appear on the face of the pleading attacked, the demand shall be supported by affidavits or other evidence filed with the pleading or motion. * * * As to defenses and objections based upon subrule 116.1(5), the court may order immediate trial of any disputed questions of fact, and judgment may be rendered forthwith if the proof shows that the moving party is entitled to judgment on the facts as determined; or the court may postpone the hearing on the matter until the trial on the merits, and shall postpone the hearing if a jury trial has been demanded pursuant to right on or before the day of the hearing."

life, both before and after the June 1965 accident.[3]

---

[3] The substance of the affidavits filed for Davidson follows:

1. Ada K. Richardson swore that she had known Davidson for many years. He had lived at her home off and on since before 1952. Mentally he is the same now as he was when she first knew him. There were instances when she had to explain to him matters that the ordinary person would understand and she cared for some of his business matters because of his lack of understanding. He cannot read and can write only his name. It is her opinion that he is incompetent mentally and because of this is prevented from comprehending rights he would otherwise be bound to know. When Davidson, a construction worker, had to fill in time sheets he brought them home to her because he was mentally unable to fill them in. She took care of his business and for years would go to the bank with him because he was unable to read the amount of a check and could not transact business with the bank. Over the years she had opportunities to observe Davidson by close association and believes that he is not normal mentally and that he is mentally retarded. He is like a small child as far as understanding anything about legal matters or business. Indeed, whenever Davidson needed the services of a physician or dentist it was necessary to take him to the doctor as she would a small child.

2. Frederick Richardson, son of Ada K. Richardson, swore that he and Joe Davidson lived in the same house with Mrs. Richardson for many years. Joe Davidson knows nothing about legal matters or courts. He is mentally incompetent and because of this he is prevented from comprehending rights he would otherwise be bound to know. Davidson's mental condition is the same now as when Richardson first knew him. Davidson cannot follow directions in business or legal matters. He does not know the value of things. He will let things go for a long time and then try to do something about matters all of a sudden. On one occasion when Richardson and Joe Davidson went to buy a used car it was necessary for Richardson to read the sales agreement and contract. Davidson did not know what was in it after it had been read to him and knew only to sign his name. On many occasions, since Davidson cannot read or write, Richardson wrote letters for Davidson and read to him letters that he had received.

3. Adnan Barol swore that he is a medical doctor specializing in psychiatry. On October 16, 1969, he made a psychiatric examination of Joe Davidson. He found no evidence of hallucinations or delusions. However, Davidson was unable to write and read, he could sign his name only, and he was poorly oriented as to time, he did not know the date and month but he knew it was Thursday and the Fall of 1969. He remembered the names of some presidents but could not remember President Nixon's name. He was correctly oriented as to place, was very poor in simple mathematics, and his knowledge of general information seemed to be very poor, e.g., he stated that there were only seven states in the United States. His memory seemed to be somewhat impaired, especially for recent events. The doctor stated that his diagnostic impression was that Davidson was suffering from a mild chronic brain syndrome associated with mild mental retardation; he has poor

Added defendants Process and Van Tongeren did not, in support of their motion for accelerated judgment, submit by affidavit or otherwise any evidence contradicting the matters set forth in the affidavits filed in Davidson's behalf.

In a bench-dictated opinion granting the motion for accelerated judgment, the judge stressed that Davidson had filed an application with the workmen's compensation department within two weeks of the accident and that he was represented by an attorney at the time. He also said that the doctor did not in so many words say that Davidson was suffering from a mental derangement which would prevent him from "comprehending rights he is otherwise bound to know"; but in that observation the judge seems to have been laboring under a misapprehension concerning the scope of the doctor's affidavit—see fn 3. The affidavits filed by the Richardsons were, said the judge, conclusory and otherwise insufficient. He concluded that since

judgment and is unable to comprehend even simple legal procedures. It was the doctor's opinion that Davidson had been mentally handicapped and afflicted with a condition of mental derangement such as to prevent him from comprehending rights he is otherwise bound to know and that this condition had existed throughout his life, on, before, and after June 1, 1965.

After an accelerated judgment had been entered dismissing the complaint as to the added defendants, Davidson moved for reconsideration on a claim of newly-discovered evidence. In support of his motion, he presented the affidavit of Rosie L. Caldwell, one of his sisters. She was 51 at the time of the affidavit, July 29, 1970, and said that Joe Davidson was three years of age when she was born. She said that he went to school but could not learn. All the other members of their large family (Joe was the seventh child) learned to read and write and the other subjects that were taught in school and some of them had received higher educations. Joe was different from the rest of the family. She remembers that he could not learn to tie a bowknot and could not tie his shoe laces. He was also different from the other children in respect to his reaction to discipline by his parents. Based on her observations since they both left home, he is the same now mentally as he always was and he was and is a mentally-retarded person unable to learn. An order denying Davidson's motion to set aside the accelerated judgment was entered.

Davidson had been represented by counsel when his workmen's compensation claim was filed and, within the three-year limitational period, had retained the attorney who represented him in commencing this action against the originally-named defendant, he was not prevented by mental derangement from comprehending rights he was otherwise bound to know. We take a different view of the matter.

We are not prepared to say that ability to retain a lawyer is conclusive evidence of mental competence for the purposes of this tolling provision. The record does not show what prompted Davidson to consult the lawyers who represented him. Davidson might have been taken to both lawyers just as Mrs. Richardson took him like a small child to a doctor whenever he needed to consult a doctor (see fn 3). The fact that he retained counsel is some evidence that he was not mentally deranged, but it does not conclusively establish that fact.

Nor does the fact that the lawyer representing Davidson in this action was able to write letters in Davidson's behalf in connection with this lawsuit negate Davidson's claim of mental derangement. Even if information was obtained from Davidson— either in response to inquiry by his lawyer or volunteered—it would not absolutely negate the claim of mental derangement. One need not be a blithering idiot in order to raise the defense of mental derangement under this statutory provision.

Although Davidson was able to work regularly for various employers over a period of years and was able to perform sufficiently well to earn good wages, it does not inevitably follow that he was not insane within the meaning of this statutory provision. The statutory definition of insanity as "mental derangement barring the sufferer from comprehending rights he is otherwise bound to know" is taken from

*Valisano* v. *Chicago & N. W. R. Co.* (1929), 247 Mich 301, 304, where the Court observed: "The insane often perform manual labor".[4]

And, while in response to an interrogatory (put by the originally-named defendant) whether at the time of the accident he had any physical or mental impairment or disability, Davidson responded, "No", his response would not constitute a binding judicial admission precluding him from claiming that his insanity tolled the statute of limitation.

A judicial admission "is a distinct, formal, solemn admission made for the express purpose of, *inter alia,* dispensing with the formal proof of some fact at trial". *Ortega* v. *Lenderink* (1969), 382 Mich 218, 222, 223.[5] Since the admission here was made before any statute-of-limitation issue had been raised, it could not be said that the admission was a distinct, formal, solemn admission made for the express purpose of dispensing with formal proof on the disputed factual issue of whether Davidson was mentally deranged within the meaning of the statutory provision tolling the statutes of limitations.

The facts that Davidson was able to work and engaged lawyers to advance his claims and his response to the interrogatory are at most evidence to

---

[4] The committee comment states that the statutory definition of the term "insane" adopts "case law of this State". See the case of *Valisano* v. *Chicago & N. W. R. Co.* (1929), 247 Mich 301, 304, where the Court says "The term 'insane' as employed in the statute, means such a condition of mental derangement as to actually bar the sufferer from *comprehending rights he is otherwise bound to know.*" (Emphasis supplied.) Reprinted as annotation, 34 MCLA, p 915; 23 Stat Ann 1962 Rev, pp 116, 117.

[5] In *Ortega* v. *Lenderink* (1969), 382 Mich 218, 223, the defendant testified that he parked his truck 17 or 18 feet from a crosswalk. The plaintiff presented testimony which would support a finding that defendant parked 21 feet 4 inches from the crosswalk; if that were so, the defendant did not violate a statute which prohibited parking within 20 feet of the crosswalk. The Michigan Supreme Court ruled that the defendant was "entitled to the benefit of testimony in support of a verdict in his favor despite his expression of an opinion inconsistent therewith".

be considered by the trier of fact in deciding whether he was mentally deranged.

The added defendants rely on *Kroes* v. *Harryman* (1958), 352 Mich 642, 646, where the Michigan Supreme Court affirmed a trial court judgment dismissing added defendants on a preliminary motion because the statute of limitations had expired before an amended declaration was filed and where the Court declared:

"Before a jury is ever reached a preliminary decision must always be made, namely, whether or not there is anything to go to a jury. There can be no infringement upon the constitutional right to trial by jury if there is no issue of fact to go to the jury."

More recently, in *Erickson* v. *Goodell Oil Company, Inc.* (1970), 384 Mich 207, the Supreme Court set aside an accelerated judgment dismissing an action against an alleged third-party tortfeasor brought by an injured workman who had already recovered workmen's compensation benefits. In *Erickson* the Supreme Court concluded that there was a disputed issue of fact whether there was an employer-employee relationship between the plaintiff workman and the defendant employer at the time of injury. Because of the workman's timely demand of a jury trial, said the Supreme Court, the trial court should have refused to enter an accelerated judgment.

*Kroes* arose under Court Rule No 18 (1945) and *Erickson* under GCR 1963, 116.3. But, as appears from the *Erickson* opinion, there has been no change in the substance of the rule. Rule 116.3 restates the gist of Rule 18, § 3.[6] The inquiry to be made by a

---

[6] "Sec. 1. Defendant may, within the time for pleading, file a motion to dismiss the action or suit, where any of the following defects appear on the face of the declaration or bill of complaint,

judge under the rule governing in *Kroes* and *Erickson* is the same: Is there a disputed issue of fact? In *Kroes* the Supreme Court ruled there was "no issue of fact". In *Erickson* the Supreme Court found there was a "disputed issue of fact". Wherein lies the difference?

In *Kroes* the plaintiff claimed that her cause of action had been fraudulently concealed from her and that this tolled the statute. However, she presented no evidence whatsoever to support her claim of concealment. The most she was able to establish was that the originally-named defendant had never told her that the added defendant might be liable. That, said the Court, as a matter of law, did not (pp 647, 648) "amount to concealment of anything. * * * In short, the facts are not in dispute, only the legal conclusions to be drawn therefrom, and this does not create a jury question."

In *Erickson* the defendant Goodell Oil had voluntarily paid workmen's compensation benefits to the injured workman. His complaint against Goodell Oil, as a third-party tortfeasor, alleged that he was really an employee of Bridge Service, a retail gasoline station, at the time of injury. Goodell Oil filed a motion for accelerated judgment contending that its absorption of Bridge Service resulted in the

---

and he may, within the same time, file a similar motion supported by affidavits where any of the said following defects do not appear upon the face of the declaration or bill of complaint: * * *

"(f) That the cause of action did not accrue within the time limited by law for the commencement of an action or suit thereon. * * *

"Sec. 3. If, upon the hearing of such motion, the opposite party shall present affidavits or other proof denying the facts alleged or establishing facts obviating the objection, the court may take proof, and hear and determine the same and may grant or deny the motion; but if disputed questions of fact are involved the court may deny the motion without prejudice and shall so deny it if the action is one at law and the opposite party demands that the issue be submitted to a jury." Court Rule No 18 (1945), reprinted Honigman, Michigan Court Rules Annotated, pp 146, 147.

workman becoming one of its employees and that his negligence action was barred because his exclusive remedy as an employee was under the workmen's compensation act. The pivotal question was whether there was an implied contract of hire between the parties. The existence of an implied contract, said the Court, of necessity turns (p 212) "on inferences drawn from given circumstances, usually involv[ing] a question of fact, unless no essential facts are in dispute".

In this case, the added defendants, content to accept as true for the purpose of deciding their motion for accelerated judgment the facts stated in the affidavits filed in Davidson's behalf, assert that by reason of their concession the facts have become undisputed and, therefore, the trial judge could properly decide the question as he did without a jury trial.

It is, indeed, true that in the typical case the underlying historical facts are usually in dispute and the evidence submitted by the parties contradictory, and that in such a case it does become a prime function of the trier of fact to determine what in fact occurred. However, even when the evidence and underlying facts are not in dispute, there may still be a qualitative judgment concerning the significance and meaning of the underlying facts. Such questions or judgmental facts are sometimes called "mixed questions of law and fact" or "ultimate facts". If the qualitative judgment is in dispute, then the ultimate fact is generally a disputed question of fact. For example, even if there is no dispute concerning the underlying historical facts, it is ordinarily for the trier of fact to decide a question requiring an appraisal of the reasonableness or quality of a person's behavior or actions—as in negligence, homicide, and many contract cases.

Only when all reasonable men must agree may the court properly, and then only in a civil case, decide the question as one of law.[7]

The question here presented also involves a value judgment of the kind we generally entrust to the trier of fact in recognition of our inability to crystalize an omniscient rule which would eliminate the need to make a case-by-case appraisal in applying the general standard to the specific facts at hand. Here, even though there may be no dispute regarding the underlying historical facts, on the record presented we could not properly say that all reasonable men would agree that only one conclusion could be reached on the question whether Joe Davidson was by reason of mental derangement prevented from comprehending rights he is otherwise bound to know.

The averments in the affidavits submitted in Joe Davidson's behalf provide a more than adequate basis upon which a trier of fact could infer and conclude that he was suffering from a mental derangement such as would prevent him from comprehending rights he otherwise is bound to know.[8] Whether inferences or conclusions favorable to Davidson's contention should be drawn from such averments is a matter entrusted to the trier of fact and not to be decided summarily as a matter of law. Decision requires an appraisal and an exercise of

[7] See, generally, James, Civil Procedure, § 7.10, p 267; 2 Harper & James, The Law of Torts, §§ 15.2 p 872 *et seq.;* 15.3, p 880 *et seq.;* Restatement Torts, 2d, § 328B, comment on clause (d); 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 360; *Miller* v. *Miller* (1964), 373 Mich 519, 524, 525; *Nagy* v. *McEachern* (1970), 28 Mich App 439, 441; *American Employers Ins. Co.* v. *H. G. Christman & Bros. Co.* (1938), 284 Mich 36, 43; *Geiermann* v. *Detroit International Bridge Company* (1959), 355 Mich 73, 76; *Schreiner* v. *American Casualty Company* (1965), 1 Mich App 43, 47. See, also, analysis in 4 Davis, Administrative Law Treatise, ch 30, p 189 *et seq.* and 1970 Supp, p 1023 *et seq.*

[8] See, also, *Emery* v. *Chesapeake & O. R. Co.* (1964), 372 Mich 663, 668.

judgment concerning the extent of his mental infirmity. It is not a question on which all reasonable men would necessarily reach the same conclusion.

The trier of fact demanded by Davidson was a jury. Under the court rule, the added defendants having failed to show that there was no disputed issue of fact and Davidson having affirmatively shown that there was, Davidson was entitled to have the disputed issue decided by a jury.[9] It was not, on this record, an issue which the court could properly decide as a question of law.

The added defendants also contend that since this action was commenced against the originally-named defendant within the three-year period of limitations Davidson should not be allowed to avail himself of the tolling provision which contemplates a situation where no action is commenced.[10]

We see no reason why commencement of an action against one possible defendant should automatically deprive the plaintiff of the right to assert the tolling provision against other defendants. The mental condition of a person suffering from the kind of derangement contemplated by the statute might be such that, while somewhat aware, he is only partially aware of the circumstances entitling him to main-

---

[9] Even if a jury had not been demanded and the factual dispute was to be decided by a judge, the issue could not have been decided on affidavits without a trial hearing. Where the supporting or opposing affidavits or other evidence reveal that there is a disputed question of fact, it can be decided only after a trial of that question. The court may, under the rule, in its discretion order an immediate trial where a jury is not demanded but a judge may not anticipate his role as trier of the fact and decide the disputed question without a trial hearing. *Cf. Durant v. Stahlin, Appeal in re Van Dusen, Elliott, Romney* (1965), 375 Mich 628, 647; *Zamler v. Smith* (1965), 375 Mich 675, 679, 682.

[10] We note in this connection that Davidson delayed 17 months and 20 days in consulting the lawyer who commenced this action. If just that amount of time were to be added to the three-year statutory limitational period, the statute would have expired November 21, 1969, after added defendant Process Solvent had been served but before added defendant Van Tongeren was served.

tain an action; such a person may be only partially or imperfectly able to assist his lawyer in prosecuting the action. Davidson's lawyer may have been laboring under some difficulty in the prosecution of this action by reason of Davidson's mental retardation. We could not properly say that it would be opposed to the policy of the tolling provision to allow it to be availed of on the presented facts.

Reversed and remanded for trial.

All concurred.