Prather M. ADKINS, Appellant,

v.

**NABORS ALASKA DRILLING, INC., Appellee.**

No. 4410.

Supreme Court of Alaska.

April 4, 1980.

Michael W. Flanigan, Murphy L. Clark, Anchorage, for appellant.

Stephen C. Hillard, Graham & James, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BOOCHEVER, Justice.

This is an appeal from an order granting a summary judgment dismissing Nabors Alaska Drilling, Inc., from a personal injury action brought by Prather M. Adkins. The essential question is whether Adkins could, under Alaska's tolling statute, AS 09.10.140, add Nabors as a party defendant after the limitations period. Adkins claimed that he was "insane" within the meaning of the tolling statute. Adkins also contended that under Alaska Rule of Civil Procedure 15(c),

1. Adkins alleges that Tri-State Oil Tool Industries is a subsidiary of Standard Oil of California, but Standard denies this.

2. *See* R. N. Gray, Attorney's Textbook of Medicine §§ 90.21; 90.28 (3d ed. 1979).

3. AS 09.10.070 specifies:
    *Actions to be brought in two years.* No person may bring an action (1) for libel, slan-

the amendment to his complaint adding Nabors related back to his original complaint filed before the limitations period had run.

Adkins alleged that he tripped and fell over a hose near a trailer in the early morning hours of August 9, 1975. The accident occurred at the drilling site of an oil well leased to Standard Oil of California. Nabors Alaska Drilling, Inc., had contracted with Standard to drill the well. Adkins was employed by Tri-State Oil Tool Industries at the time.[1] Adkins was discovered by Nabors' drilling superintendent Norton Goff, who found him "lying in a pool of water beating his hard hat against the trailer." Adkins was "incoherent," unable to talk, and seemed partially paralyzed. According to documents submitted by Adkins, he was examined by Dr. Feller, an Anchorage physician, in September and October of 1975. Dr. Feller's diagnosis was that Adkins had a post-concussion syndrome with antegrade amnesia.[2] Sometime before July 20, 1977, the Highlands Insurance Company, the workmen's compensation carrier for Tri-State Oil Tool Industries, paid a claim to Adkins for his injuries.

Adkins retained his present lawyer early in March, 1977. On July 20, 1977, Adkins and Highlands sued Kenai Drilling of Alaska, Standard Oil Company of California, and the "Joe Doe Agents thereof." On April 21, 1978, slightly more than eight months after the statute of limitations, AS 09.10.070,[3] had run, Adkins and Highlands amended their complaint to add Nabors Alaska Drilling, Inc., as a party defendant. On May 11, 1978, Nabors filed a Rule 12(b) motion to dismiss Adkins' amended complaint for failure to state a claim. In support of its motion, Nabors submitted a memorandum contending that the statute of limitations barred any action against it.

der, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

On June 6, 1978, Adkins filed a memorandum in opposition to Nabors' motion to dismiss. His memorandum states, for the first time, that the statute of limitations was tolled under AS 09.10.140[4] because of Adkins' mental condition. Adkins also argued that Rule 15(c) would allow the claim against Nabors to relate back. Adkins did not include affidavits to support his claim of incompetency. Instead, he submitted copies of what appear to be two medical memoranda and a letter written by an insurance adjustor. All this material relates to Adkins' condition in the months immediately following the accident.

On July 5, Nabors submitted a reply memorandum challenging Adkins' interpretation of Rule 15(c), and lack of admissible evidence to support an insanity defense. Nabors also submitted the affidavit of James Taylor, the company's president, which states that Nabors had no actual notice of a lawsuit until April 21, 1978, when the amended complaint was filed.

Apparently in an effort to resist Nabors' memorandum and affidavit, Adkins' lawyer filed his own affidavit. He stated that he had spoken to Norton Goff, who worked for Nabors and discovered the accident. He also averred that he had spoken with Dr. Feller concerning Adkins' mental condition, and that Dr. Feller stated that he had treated Adkins for a concussion that caused Adkins to have amnesia. Finally, Adkins submitted a copy of what purported to be a form drilling contract signed by Nabors and Standard Oil. Paragraph 11 of the contract requires Nabors to name Standard Oil as an "additional insured" on its liability policy. This, according to the affidavit, made it "clear" that for Rule 15(c) purposes, notice to Standard was the same as notice to Nabors.

On July 17, the superior court held a hearing on Nabors' motion to dismiss. The trial judge declined to rule from the bench in order to give Adkins more time to present his case. However, it is unclear from the record whether he intended all material to be filed within ten days of the hearing, or whether Adkins was to be given sixty days to file material relating to Adkins' incompetency claim and ten days for a brief.[5]

---

4. Prior to 1979, AS 09.10.140 read:

   *Disabilities of minority, insanity, and imprisonment.* If a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues either (1) under the age of 19 years, or (2) insane, or (3) imprisoned on a criminal charge, or in execution under sentence of a court for a term less than his natural life, the time of the disability is not a part of the time limited for the commencement of the action. But the period within which the action may be brought is not extended in any case longer than two years after the disability ceases.

   AS 09.10.140 was amended by the legislature during the 1979 session. Ch. 46, SLA 1979. The word "insanity" in the title has been changed to "incompetent." Clause (2) now reads "incompetent by reason of mental illness" rather than "insane." Both these changes were made by amendment on the floor of the House. *See* 1979 House Journal 1033–34. The amendments were approved by both houses, signed by the governor, and became effective August 3, 1979. The original version of the tolling statute was in effect at the time of the trial court's decision, and the parties do not contend that the amended version applies. We believe that the same construction should be applied to the former statute as to the amended version. *See* footnote 12, *infra*.

5. First, the trial judge gave Adkins sixty days to submit some material:

   THE COURT: How much time—how much time are you talking about if I go that way?
   MR. FLANIGAN: Well, Your Honor, I think . . . . .
   THE COURT: What—what are you asking for, 30 days?
   MR. FLANIGAN: I've been involved in several cases where this—this remedy was granted. It's always been about 60 to 90 days. I would—I think 60's enough . . . . . Sixty days allows a lot more flexibility.
   THE COURT: All right.

   But later in the hearing, the court stated:
   THE COURT: I think an additional brief would be more helpful than the affidavit. I don't want to deprive the plaintiff of the opportunity to be heard, if he can really stay in court. Mr. Hillard, I'm inclined to give the plaintiff an opportunity to file—then, would you need five days to . . . . .
   MR. FLANIGAN: That would be sufficient, Your Honor. ·
   THE COURT: I'll give you ten—I'll give you ten days to file a brief. And then I don't think it'd be necessary for argument. And

Seventeen days after the hearing, on August 3, Adkins' lawyer filed a brief and the affidavit of Norton Goff. Finally, in mid-August he submitted his own affidavit and affidavits from Adkins and his wife taken in Louisiana.

Nabors submitted motions to strike all this material. Its position was that the material was submitted late, against the court's order, and that there had been no stipulation between the parties to extend the time for filing.

None of the orders to strike were signed by the trial judge. On September 7, the court filed an order without an opinion dismissing Nabors from the case.

Nabors then moved for an entry of final judgment. Adkins opposed the final judgment motion and submitted his own motion to have the court's September 7 order vacated. The basis for Adkins' motion was essentially that he had discovered "new evidence" in the form of an affidavit by Dr. Feller, who had read the affidavits of Adkins and his wife. Dr. Feller's affidavit stated in part that it is "medically possible that Mr. Adkins is still suffering from a 'post concussion syndrome.'" After briefing by both parties, on November 8, the trial court entered final judgment dismissing Nabors and denying Adkins relief under Rule 60. Adkins then filed this appeal.

## I. PROPRIETY OF ENTERING FINAL JUDGMENT

■ Adkins first contends that it was an abuse of discretion for the trial judge to grant final judgment to Nabors rather than waiting for the entire matter to be consolidated in a single appeal.

Civil Rule 54(b)[6] gives discretion to a trial judge to grant final judgment to one party or claim so that an immediate appeal may be taken. The rule seeks to accommodate the competing interests of not forcing a party to wait until a court reaches a final judgment as to all claims or parties with the equally desirable policy of avoiding duplicitous and piecemeal appeals. *Panichella v. Pennsylvania Railroad Co.*, 252 F.2d 452, 454 (3d Cir. 1958).

In *Johnson v. State*, 577 P.2d 706 (Alaska 1978), this court considered some of the factors that might be relevant in determining whether final judgment would be appropriate under Rule 54(b). We noted that findings similar to those governing interlocutory appeals under Appellate Rules 23 and 24 should be made. *Id.* at 710. Specifically, we considered that later proceedings might make a present appeal moot. We noted there might be a close relationship between several claims or parties so that a more complete factual record would be developed to aid in deciding an appeal later. Additionally, we considered whether a present appeal would simplify or shorten later proceedings. *Id.* at 711.[7]

Adkins seems to suggest that the present appeal against Nabors may be mooted because he might be able to collect his entire judgment from the original defendant, Standard Oil. However, the mootness issue presented here is considerably different from the issue presented in *Johnson.* Un-

---

then that'll give me a—that'll give you a chance to fully state your position. All right. Thank you gentlemen. This court's adjourned.

6. Alaska Rule of Civil Procedure 54(b) states:
   *Judgment Upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

7. *See generally* 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2659, at 75 (1973).

**20**

like *Johnson*, there is no relationship here between Adkins' present claim, that the statute of limitations was tolled in his action against Nabors, and his claim against Standard. Nothing that happens at trial will moot this issue. At the close of trial, Adkins may still wish to appeal his claim against Nabors.

Adkins also argues that more evidence will be developed in his case against Standard that will permit the court to determine the statutory standard of "mental illness" in the light of a complete record. Although *Johnson* involved a question of statutory interpretation, it was clear there that the statute would remain an issue in the case among the other parties after the appeal. Here, the proper interpretation of the tolling statute has nothing to do with Adkins' case against Standard. Thus, any factual record developed would be outside the scope of the statute and would not aid in its interpretation.

Nabors argues that resolution of the issue now would simplify and shorten later proceedings. It points out that if the present action goes forward against Standard alone, it may at some point be necessary to conduct a second trial solely for the benefit of Nabors. It urges that the issue be resolved now to save the expense of multiple trials and appeals.

Despite the somewhat restrictive test for determining when final judgment should be issued, we conclude that the trial judge did not abuse his discretion by granting a final judgment in this case.

## II. RELATION BACK OF THE AMENDMENT ADDING NABORS

Civil Rule 15(c)[8] provides that an amendment to a pleading relates back to the date of the original pleading so that amendments are not barred by a statute of limitations. When the amendment adds a claim, the rule provides that the claim must have arisen out of the same transaction as the original pleading. When the amendment changes a party against whom a claim is asserted, the rule is more restrictive. It provides that, within the period provided by law for commencing the action, the party to be added have "such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits."

This court has not yet directly decided a case where a plaintiff seeks to add a party defendant. *Jakoski v. Holland*, 520 P.2d 569 (Alaska 1974), held it proper to add an additional party plaintiff after the limitations period if the defendant would have known of the underlying facts of the transaction. But as noted in *McCracken v. Davis*, 560 P.2d 771 (Alaska 1977), this is a different situation from adding a defendant. We stated in *McCracken* that

> [w]hile the defendant may have been aware of a law suit, he was not necessarily documenting evidence for his defense, nor had he hired counsel to represent him since he was not a party to the action. Nothing in the *Jakoski* case supports the appellant's interpretation, which would in effect allow unqualified joinder limited only by a showing of party prejudice.

560 P.2d at 777.

Despite allowing liberal additions of claims, the federal courts have interpreted the federal analog to Civil Rule 15(c) restrictively when a plaintiff has sought to add a new defendant. In *Craig v. United States*, 413 F.2d 854, 858 (9th Cir. 1969), *cert. denied*, 396 U.S. 987, 90 S.Ct. 483, 24

---

**8.** Civil Rule 15(c) provides:

*Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is sat-

isfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

L.Ed.2d 451 (1969), the court held that "action" as used in Rule 15(c) means a lawsuit and not the incident giving rise to a lawsuit.[9] Under this interpretation, any knowledge that Nabors may have had concerning Adkins' injury is irrelevant. Adkins must prove that Nabors actually knew of his suit against Standard prior to the limitations period. Adkins filed suit on July 20, 1977. The limitations period expired on August 9, 1977. In order for the amendment to relate back, Nabors must have learned of the lawsuit during this twenty-day period.

Nabors submitted the affidavit of James Taylor, its president, which stated that Nabors had no knowledge of the lawsuit commenced against Standard.

Adkins' contention that the affidavit of Taylor is not truthful because of a purported conflict between his affidavit and the affidavit of Norton Goff is without merit, as Goff had prior information about Adkins' injury and not of the lawsuit. Likewise, Adkins' contention that Nabors had "constructive notice" of the lawsuit based on the form drilling contract signed by Nabors and Standard is without merit. Although the contract may have obligated Nabors to insure Standard, there is no evidence to suggest that Standard ever actually attempted to force Nabors to defend the claim, or even notified Nabors that an action was pending until well after the running of the statute of limitations. To imply notice in these circumstances does not have any legal or factual basis.

■ Finally, Adkins' contention that notice to Nabors may be found under the "Identity of Interest Doctrine" is meritless. Federal cases under Civil Rule 15(c) have recognized an exception to the notice requirement where there is an especially close relation between two parties. Where such a relationship exists, a court may find that notice to one party serves as notice to the other. Typically, the identity of interest doctrine has been used between an old corporation and its successor, a subsidiary and its parent, or two subsidiaries with a common parent. In these circumstances there is likely to be an overlap of officers and directors so that in fact the same people would be notified despite a different corporate name.[10] The relationship between two contracting parties such as Nabors and Standard is far too remote to support the doctrine.

## III. THE GRANT OF SUMMARY JUDGMENT DISMISSING NABORS

■ In his amended complaint, Adkins did not allege that the statute of limitations had been tolled because of his incompetency. He first presented the issue in his memorandum in opposition to Nabors' motion to dismiss. Civil Rule 12(b) states that when

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Because Adkins argued matters outside the pleadings and introduced affidavits in an attempt to show his incompetency, and the court did not exclude the material, Nabors' Rule 12(b) motion should have been treated as one for summary judgment.[11]

**9.** Professors Wright and Miller criticize this result as too literal a reading of the rule. 6 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1498, at 510 (1971 & Supp.1979). Nevertheless, *Craig* has now been followed in numerous other opinions. *Archuleta v. Duffy's, Inc.*, 471 F.2d 33 (10th Cir. 1973); *Francis v. Pan American Trinidad Oil Co.*, 392 F.Supp. 1252 (D.Del.1975); *Stephens v. Balkamp, Inc.*, 70 F.R.D. 49 (E.D.Tenn.1975); *Slack v. Treadway Inn of Lake Harmony, Inc.*, 388 F.Supp. 15 (M.D.Pa.1974).

**10.** 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1499, at 518 (1971).

**11.** The motion signed by the trial judge is denominated as a motion to dismiss under Civil Rule 12(b). As we recently noted in *Martin v. Mears*, 602 P.2d 421 (Alaska 1979), when material outside the pleadings is presented to the trial court, the motion is automatically converted into one for summary judgment unless the court "affirmatively" and "expressly" rules that it is not considering evidence outside of the pleadings. The parties must be afforded a reasonable opportunity to submit evidence in

It is uncontested that the statute of limitations had run. Under Civil Rule 56(e), this would place the burden of resisting Nabors' motion on Adkins. The initial question, then, is what evidence was properly before the court before it ruled on the motion. The second question is whether this evidence was sufficient to present a genuine issue of fact as to the tolling of the statute.

■ The general rule is that material submitted in support of, or in opposition to, a motion for summary judgment must "set forth such facts as would be admissible in evidence." Alaska Rule Civ.P. 56(e); *Jennings v. State*, 566 P.2d 1304, 1309 (Alaska 1977).

■ On June 6, Adkins filed a memorandum stating that his mental condition "made it impossible for him to name defendant, Nabors, at a time within the statutory period." Attached to this memorandum, Adkins submitted two memoranda from Dr. Feller, and what appears to be the first page of an insurance adjustor's report. Nabors made timely objections to all this material, correctly noting that the attached documents were inadmissible because they were not verified. *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 450 (Alaska 1974); *Douglas v. Beneficial Finance Co. of Anchorage*, 334 F.Supp. 1166, 1169 (D.Alaska 1971). Adkins' unsupported statements in his memorandum are likewise inadmissible. *United States v. Lot 800 in Square 1928*, 169 F.Supp. 904, 908 (D.D.C.1959), *motion for leave to file pet. for relief den.*, 359 U.S. 987, 79 S.Ct. 1134, 3 L.Ed.2d 977 (1959).

■ Adkins' lawyer next submitted his own affidavit. This includes statements allegedly made by Dr. Feller and Adkins. Neither statement is made on the personal knowledge of Adkins' lawyer and both are hearsay. For this reason, these statements could have been excluded. *Twelve Hun-*

*dred "L" Street Corp. v. Inlet Co.*, 438 P.2d 708, 710 (Alaska 1968); *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396, 398 (8th Cir. 1976). But, it does not appear from the record that Nabors ever specifically objected to this affidavit, consequently defects may be treated as waived. *Auto Drive-Away Co. of Hialeah, Inc. v. ICC*, 360 F.2d 446, 448–49 (5th Cir. 1966).

■ After the hearing, Adkins' lawyer submitted the affidavits of himself, Norton Goff, Adkins and his wife. The four affidavits all suggest that Adkins suffered a severe head injury.

Nabors strenuously objected to introduction of this material in the trial court and here. Its argument is that the trial judge granted Adkins a ten-day period of time beginning from the hearing date in which to file supplemental material. In Nabors' view, any material filed after this time was filed without permission of the court's order and was hence inadmissible.

As discussed above, however, the trial judge's bench order is not entirely clear. At one point, the judge appeared to grant Adkins sixty days to file supplemental material, but later he seemed to imply that Adkins had only ten days. In *Johnson v. Johnson*, 544 P.2d 65, 69 n.5 (Alaska 1975), we noted that "all parts of an order must be read together." The two apparently contradictory deadlines can be harmonized by assuming that Adkins was given ten days to file a brief and sixty days to file other material. The trial judge properly appeared concerned that Adkins have a fair chance to present his case before granting Nabors' motion. The fact that the court did not sign the orders to strike submitted by Nabors favors this interpretation. Our conclusion is that these affidavits were properly before the court and should have been considered.

support or opposition to the motion as required by Civil Rule 12(b). Here, the court invited additional evidence to be submitted. Therefore, although the court denominated the motion as a motion to dismiss and failed to state

whether it considered material outside the pleadings, on the present record it is clear that the motion was judged as one for summary judgment, and we shall treat it as such.

Finally, Adkins submitted an affidavit from Dr. Feller, after the court had granted Nabors' motion to dismiss, and more than sixty days after the hearing on Nabors' motion. There is no question that the court did not consider this affidavit in deciding the motion, and it was not required to do so.

▮ Courts have interpreted liberally the type of mental condition that will toll a statute of limitations. The general test is whether a person could know or understand his legal rights sufficiently well to manage his personal affairs.[12] It does not require a formal finding of incompetency by a court. Courts in several jurisdictions have found persons incompetent who suffered serious head injuries.[13]

▮ Plaintiffs have engaged in a surprising amount of activity and still have successfully claimed to be incompetent under a tolling statute. This is especially true where a court would be required to hold as a matter of law that the plaintiff was competent, such as in a summary judgment motion or motion on the pleadings. In at least three cases, plaintiffs have retained attorneys, commenced actions prior to the limitations period and claimed the protection of a tolling statute to add an additional party after the limitations period.[14] A Michigan court noted that a plaintiff's mental condition

> might be such that, while somewhat aware, he is only partially aware of the circumstances entitling him to maintain an action; such a person may be only partially or imperfectly able to assist his lawyer in prosecuting the action.

*Davidson v. Baker-Vander Veen Construction Co.*, 35 Mich.App. 293, 192 N.W.2d 312, 319 (1971).

In addition to retaining lawyers and starting lawsuits within the limitations period, plaintiffs have been allowed to claim incompetency where they have worked "for good wages," 192 N.W.2d at 316, and had children. *Valisano v. Chicago & N. W. Railroad Co.*, 247 Mich. 301, 225 N.W. 607 (1929). They have been allowed to file for and obtain workmen's compensation benefits and Social Security payments. *Hill v. Clark Equipment Co.*, 42 Mich.App. 405, 202 N.W.2d 530 (1972).

The affidavit of Norton Goff indicates that Adkins suffered a severe head injury. The admissible evidence from Dr. Feller indicates that Adkins was apparently suffering from a concussion and amnesia after the accident, and that he continued to take painkilling drugs into 1977. This evidence strongly suggests that at least during a portion of the two-year period of limitations Adkins was incompetent. The affidavits submitted by Adkins and his wife state that he presently suffers from a "partial loss of memory." His reflexes are slower, he has difficulty concentrating, he is less alert and he takes painkilling drugs. He has trouble maintaining his balance, which has caused him to have another accident. Although he has two small children to support, he can no longer work. Adkins' lawyer stated that it took five hours of questioning to obtain Adkins' affidavit. He states that Adkins had "lapses of memory at times during mid-sentence."

Viewing the evidence in the light most favorable to Adkins, it is apparent that he

---

**12.** *Allen v. Powell's Int'l, Inc.*, 21 Ariz.App. 269, 518 P.2d 588 (1974); *Collins v. Dunifon*, 163 Ind.App. 201, 323 N.E.2d 264 (1975); *Hornig v. Hornig*, —— Mass.App. ——, 374 N.E.2d 289 (1978); *Sobin v. M. Frisch & Sons*, 108 N.J.Super. 99, 260 A.2d 228 (1969); *Hurd v. County of Alleghany*, 39 A.D.2d 499, 336 N.Y.S.2d 952 (1972). *See* Annot., 9 A.L.R.2d 964 (1950). This same test is applied whether the applicable tolling statute uses the term "insane," as AS 09.10.140 provided at the time this case arose, or some other language such as "incompetent by reason of mental illness," as the later amendment provides. *See* note 4, *supra*.

**13.** *Walker v. Pacific Basin Trading Co.*, 536 F.2d 344 (10th Cir. 1976) (interpreting Oklahoma law); *Hill v. Clark Equipment Co.*, 42 Mich. App. 405, 202 N.W.2d 530 (1972).

**14.** *Walker v. Pacific Basin Trading Co.*, 536 F.2d 344 (10th Cir. 1976); *Davidson v. Baker-Vander Veen Constr. Co.*, 35 Mich.App. 293, 192 N.W.2d 312 (1971); *Jaime v. Neurological Hosp. Ass'n of Kansas City*, 488 S.W.2d 641 (Mo.1973).

may well have suffered an injury that would bring him within the provisions of the tolling statute. The fact that Adkins could actively work for sometime after the accident, travel, obtain workmen's compensation benefits and retain an attorney might support an inference that Adkins was not "insane," but this is an issue to be decided at trial, not on a motion for summary judgment. The admissible evidence submitted by Adkins was sufficient to raise a genuine issue of fact as to his incompetency, and summary judgment was therefore improperly granted.

The superior court's dismissal of Adkins' complaint against Nabors is REVERSED and VACATED, and the matter REMANDED for further proceedings in accordance with this opinion.[15]

15. Given our disposition of this case it is unnecessary to consider whether the trial judge erred in denying Adkins relief under Civil Rule 60(b).